UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BETHANY H.,                                     Case No. 1:24-cv-00423

       Plaintiff,                             Hon.   Robert J. Jonker
                                                                  U.S. District Judge

     v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

### REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Nicholas Ohanesian's decision denying Plaintiff's request for Disability Insurance Benefits (DIB) and Supplement Security Income (SSI).  This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including effects from a traumatic brain injury that occurred during childhood, depression, anxiety, and panic disorders. Plaintiff asserts that the ALJ rejected psychologist Dr. Jessica Manning's opinion without addressing supportability and consistency factors.   Plaintiff also argues that the ALJ erred by finding that Plaintiff can perform her past jobs as a wire worker and marker II despite the testimony from the Vocational Expert (VE) that the imposed limitations would rule out past work.  The Commissioner asserts that the ALJ appropriately explained why he concluded that Dr. Manning's opinion was not

1

persuasive. The Commissioner argues that the ALJ found that Dr. Manning's own examination did not support the findings of marked limitations. Further, the Commissioner argues that the ALJ's decision was consistent with the medical record and Plaintiff's daily activities. Finally, the Commissioner argues that the ALJ's determination that Plaintiff could perform past work was based upon the VE's responses to post-hearing interrogatory answers indicating that an individual with Plaintiff's vocational characteristics and RFC could perform work as a router, marker, and mail clerk.

For the reasons stated below, the undersigned recommends that the Court affirm the ALJ's decision.

## I.     Procedural History

### A.     Key Dates

The ALJ's decision notes that Plaintiff applied for DIB and SSI on February 8, 2022, alleging an onset date of November 1, 2019. (ECF No. 3-2, PageID.26.) Plaintiff's claim was initially denied by the Social Security Administration (SSA) on May 13, 2022. (*Id.*) The claim was denied on reconsideration on September 20, 2022. (*Id.*) Plaintiff then requested a hearing before an ALJ. ALJ Ohanesian conducted a hearing on Plaintiff's claim on April 25, 2023, and issued his decision on July 24, 2024. (*Id.*, PageID.26-36.) Plaintiff timely filed this lawsuit on April 24, 2024. (ECF No. 1.)

### B.     Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for

determining whether an individual is disabled.  (ECF No. 3-2, PageID.27-28.) Before stating his findings at each step, the ALJ concluded that Plaintiff's Date Last Insured (DLI) was December 31, 2024.  (*Id.*, PageID.28.)

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from November 1, 2019.  (*Id.*)

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: traumatic brain injury resulting in neurocognitive disorder, multiple mental impairments, variously diagnosed/characterized as depressive disorder, anxiety disorder, and panic disorder.  (*Id.*, PageID.29.)

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  The ALJ specifically commented on the impairments listed in 12.02 (cognitive functioning), 12.04 (depressed mood), and 12.06 (excessive anxiety).  (*Id.*)  In addressing the paragraph B criteria, the ALJ stated:

> The claimant's representative contends that the claimant meets Listing 12.02, citing marked limitations in all "paragraph B" criteria based upon the findings of Dr. Jessica Manning. As discussed herein, the findings of Dr. Manning are not persuasive as they are not consistent with the exam itself, nor the other evidence of record. Dr. Manning's findings of the claimant's abilities were consistently within average range, including attention and concentration. The claimant has no evidence of inappropriate social interaction. She acknowledges a small group of friends and has gone on vacation with them. She is routinely observed to be polite. The claimant drives, and is independent in daily activities, and also babysits her nieces and nephews and tends to a rabbit hutch.
>
> Based upon the evidence of record, including the claimant's own statements, the undersigned makes the following "paragraph B" findings:
> - In understanding, remembering, or applying information, the claimant has a mild limitation
> - In interacting with others, the claimant has a mild limitation
> - With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation
> - As for adapting or managing oneself, the claimant has experienced a moderate limitation
>
> Thus, the claimant's combined mental health impairments are severe; however, because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(*Id.*, PageID.30.)

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC: "to perform a full range of work at all exertional levels but with the following non-exertional limitations . . . limited to receiving, comprehending, and executing simple, routine tasks[,] occasional changes in work duties[,] limited to end of day work quotas and no assembly line work." (*Id.*, PageID.31.)

In discussing Plaintiff's RFC, the ALJ addressed the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms (*id.*),
- a summary of the medical records relating to treatment for depression received by Dr. Linda Bessert in December of 2019 and January of 2020,

4

where she exhibited good grooming and hygiene, slowed speech and thought, appropriate reasoning, and a flattened affect, with a diagnosis of recurrent depressive disorder, current episode moderate, (*id.*, PageID.31-32),

- a summary of treating records from Hope Network showing normal mental status examinations, with Plaintiff denying "distressing thoughts", tending to her rabbits and chickens, and when she described dysthymic mood she remained active by vacationing, and exhibiting good coping skills despite some feelings of depression and anxiety, (*id.*, PageID.32),

- a summary of the opinion by Dr. Manning, Ph.D (*id.*, PageID.32-33). Dr. Manning considered Plaintiff disabled from her traumatic brain injury, and found marked limitations in remembering and applying information, interacting with others, maintaining pace, and adapting and managing herself (*id.*, PageID.32).  (As set forth above, the ALJ found Dr. Manning's opinions not persuasive and Plaintiff argues that this was error.)

- a summary of Plaintiff's daily activities including driving traveling on a vacation, babysitting, gardening, and tending to a rabbit hutch (*id.*, PageID.33),

- a summary of the Disability Determination Explanation from the initial and reconsideration levels from May 2022, determining Plaintiff's

impairments non-severe. (The ALJ found this not persuasive. The ALJ found the updated September 2022 assessment of moderate limitations in concentration, persistence, or pace somewhat persuasive, but not consistent with the medical evidence of record, including mild limitations in adapting/managing oneself. The ALJ gave "the claimant every generous benefit of the doubt" and gave moderate, rather than mild limitations (*id.*, PageID.33), and

- an explanation of how the ALJ arrived at his decision regarding the Plaintiff's RFC (*id.*, PageID.34).

At Step Four, the ALJ concluded that, through the DLI, the Plaintiff was able to perform Past Relevant Work (PRW). (*Id.*, PageID.34.)

In addition, at Step Five, the ALJ considered the Plaintiff's age, education, work experience and RFC and concluded that other jobs existed that Plaintiff could perform. (*Id.*, PageID.34-35.)

## II. Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged

with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence.  42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight.  *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III.  Analysis

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her

7

determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors but the ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

First, Plaintiff argues that the ALJ erred in finding Dr. Manning's opinion not persuasive. Plaintiff argues that the ALJ failed to address the supportability and consistency factors in evaluating Dr. Manning's opinion. Instead, Plaintiff argues that the ALJ relied upon his own lay interpretation of Dr. Manning's clinical findings, making his own independent medical findings, which amounted to nothing more than

8

second-guessing Manning's medical opinion. Plaintiff argues that rather than relying on another medical opinion, the ALJ mischaracterized Dr. Manning's report and simply substituted his own opinion for that of Dr. Manning. Plaintiff also argues that the ALJ failed to consider consistency and only made a conclusory statement that marked limitations were not supported by the medical record and Plaintiff's daily activities.

Dr. Manning conducted a psychological evaluation, at the request of Plaintiff's counsel, which involved interviewing and testing Plaintiff. (ECF No. 3-9, PageID.552-560.) Dr. Manning encouraged an appeal of the disability denial decision, concluding that Plaintiff was disabled from the effects of her traumatic brain injury, with an inability to support herself. (*Id.*, PageID.558.) Dr. Manning recommended part-time work such as childcare and working at the family business. (*Id.*) Dr. Manning also encouraged continued mental health treatment for symptoms of depression and anxiety, and actively replacing negative and avoidant behaviors with positive alternatives. (*Id.*) Dr. Manning further recommended health eating, physical activity, and use of Plaintiff's CPAP as prescribed. (*Id.*, PageID.559.)

Dr. Manning found:

> Bethany is considered disabled from her TBI, due to her marked limitations in remembering and applying information, interacting with others, maintaining pace, and adapting and managing herself. These difficulties are complicated by depression and anxiety, which are serious and persistent. There are some types of work that Bethany could do, but this would require very specific parameters. She would need to be in an environment with very low pressure. She would not be able to function well in a workplace that is especially fast-paced or demanding, as she is likely to shut down and experience increased suicidal ideation. She cannot function well in environments where she needs to learn and freely recall a great deal of information, particularly quickly. It would be very challenging for her to learn new processes or facts to function effectively in many types of workplaces. She can be slow to put her thoughts into words, and environments with high interpersonal demands would also be very poor fits for her. When considering her specific needs, it is extremely unlikely that she would be able to independently financially support herself. Continuing to work part-time, such as by babysitting, working for the family's kettle corn business, or working in a supported workplace, may be beneficial to allow for more routine and a sense of contribution, but it is appropriate that her primary financial support is from disability income.

(ECF No. 3-9, PageID.558.)

The ALJ explained his evaluation of Dr. Manning's opinion:

> The claimant presented for a psychological evaluation with Jessica Manning, PhD, referred by her representative. The interview occurred November 23, 2022 and testing was December 8, 2022. The interview was via videoconference and testing was in-person. The claimant described a traumatic brain injury from a motor vehicle accident at 11 years old, and stated that she has had problems with learning, memory, concentration, attention, depression, anxiety, and physical pain since that time. The claimant was homeschooled due to her parents' religious beliefs, and there are no education records. The claimant exhibited appropriate hygiene and grooming. She appeared anxious but was quiet and focused. Her intellectual ability was deemed average. Adaptive behavior testing was in the 25th percentile. Statements by the claimant's parents reflected a lower level of functioning. Testing also revealed below average range processing speed. Immediate attention was adequate and sustained attention was fairly consistent. Dr. Manning concluded that the claimant's test results reflected a variable profile with many areas of functioning within the average range. Dr. Manning also stated that available information reflected ongoing cognitive and emotional difficulties due to her TBI; however, it is unclear what, specifically, she is referring to. Dr. Manning concluded that the claimant is considered disabled from her TBI, noting marked limitations in remembering and applying information, interacting with others, maintaining pace, and adapting and managing herself. (Exhibit 6F)

(ECF No. 3-2, PageID.32.)

The ALJ properly determined that decisions regarding disability was reserved to the Commissioner and were not "medical opinions, but dispositive administrative findings requiring familiarity with the Regulations and the legal standards set forth therein." (ECF No. 32, PageID.33.) Therefore, the ALJ did not err in his decision regarding Dr. Manning's opinion regarding Plaintiff's disability.

The ALJ further stated that Dr. Manning's conclusion of marked limitations were not supported in the record for several reasons: (1) Dr. Manning's own findings were consistently average, (2) other medical evidence in the record failed to support marked limitations, and (3) Plaintiff's daily activities did not support marked limitations.

First, Dr. Manning reported that despite Plaintiff's difficulties, her intelligence, verbal and nonverbal reasoning, and Full Scale IQ of 102 were average. (ECF No. 3-9, PageID.554-555.)  Dr. Manning found that Plaintiff's adaptive behaviors fell within the average range.  (*Id.*, PageID.555.)  Plaintiff's parents described her as functioning "similar to an individual with a mild intellectual disability."  (*Id.*)  As to Plaintiff's ability to manage herself, Dr. Manning concluded she performed skills in this area at the bottom of average ability.  (*Id.*, PageID.555-556.)  Similarly, she tested at the bottom half of attention and concentration, average range in language functioning, and non-verbal reasoning. (*Id.*, PageID.556.) Further, although Plaintiff exhibited memory issues, she functioned in the low average area concerning memory.  (*Id.*)  Dr. Manning assessed Plaintiff with moderate depression with cognitive emotional components, and anxiety in the mild range.  (*Id.*, PageID.557.)  The ALJ's explanation that Dr. Manning's determination that Plaintiff had marked limitations were not supported by her own examination results was an accurate statement of Dr. Manning's evaluation.

The ALJ further considered other medical evidence in the record (ECF No. 3-2, PageID.32-33), including Dr. Bessert's treatment of Plaintiff with Cymbalta in

December of 2019, with Plaintiff reporting the next month on January 21, 2020, that she experienced no anxiety and her depression was slowly improving. (ECF No. 3-9, PageID.520.) Plaintiff then began treating with HOPE Network and reported that she was doing well, and her mental examinations revealed good, fair, appropriate, and normal findings. (ECF No. 3-8, PageID.381, 385, 391, 396-397, 410-411, 420, 432, 445, 451, 460.) The ALJ also explained why he was giving Plaintiff moderate limitations in maintaining concentration, persistence and pace and in adapting/managing oneself. (ECF No. 3-2, PageID.33.) Finally, the ALJ described Plaintiff's daily activities and her ability to drive. The ALJ explained:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant remains independent in her daily activities. She is able to drive, shop, and manage finances. While the claimant contends that her functional abilities are severely limited, it is difficult to reconcile the fact that the claimant, throughout the period of alleged total disability, reported she continued to operate a motor vehicle. The operation of a vehicle is a very dynamic task in a changing environment that is largely influenced by the driver. Since the primary role of any motor vehicle operator is the safe control of the vehicle within the traffic environment, driving can be considered a complex task that requires the making of continuous decisions/judgment calls. It also requires social interaction, and the ability to multitask while dealing with external and internal stimuli. Driving as an activity is therefore made up of strategic decisions (i.e. route-choice while driving, mirror use, vehicle speed, vehicle condition, response to emergency vehicles, etc.), maneuvering decisions (i.e. reaction to: the behavior of other traffic participants, road hazards, pedestrians, animals, etc.), and control decisions (i.e. basic vehicle operation, radio and/or cellphone operation, etc.), all of which indicate functioning at a level in excess of that alleged by the claimant. Nevertheless, when demand exceeds a driver's capacity, it may result in affected performance; however, in the instant matter, it is clear from the record that, at least at times relevant to the issue of disability, the claimant retained the cognitive ability to drive, and the fact she was capable of such a complex task was considered when assessing the severity of her allegations regarding the aforementioned mental disorders. Furthermore, during the alleged period of disability, the claimant has traveled on vacation, babysits, gardens, and tends to a rabbit hutch.

(ECF No. 3-2, PageID.33.)

In the opinion of the undersigned, the ALJ properly addressed the factors of

supportability and consistency and met the articulation requirements of the regulation. "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). The ALJ fully evaluated Dr. Manning's opinion by addressing her evaluation and her reported test results, which did not support her conclusion of marked limitations. Further, the ALJ considered and explained that the other mental health records and Plaintiff's own daily activities in determining that Dr. Manning's opinion lacked supportability and consistency and was therefore not persuasive.

Plaintiff argues that the ALJ erred by finding that she could perform past jobs as a wire worker and marker II because that conclusion was in direct conflict with the VE's testimony ruling out all past work. (ECF No. 3-2, PageID.84.) The VE also testified that an individual with the restrictions imposed could perform jobs such as a laundry worker, industrial cleaner, and hospital cleaner. (*Id.*, PageID.84-85.) Plaintiff argues that the ALJ relied upon entirely different jobs in his decision at the final step. Plaintiff argues that the ALJ's errors at Step IV and Step V were prejudicial.

In finding that Plaintiff could perform past relevant work, the ALJ failed to discuss the VE's testimony that Plaintiff could not perform past relevant work.

13

(ECF No. 3-2, PageID.84.) That was clearly error. However, the ALJ went further and found that Plaintiff could perform other jobs based upon the restrictions imposed. The ALJ submitted post-hearing interrogatories to the VE regarding the jobs that that a hypothetical individual with the restrictions imposed could perform. (ECF No. 3-7, PageID.356-365.) The VE's responses included the jobs relied upon by the ALJ in his decision based upon the accepted work restriction – router, marker, and mail clerk. (ECF No. 3-7, PageID.358-359.) Accordingly, it is the opinion of the undersigned that the ALJ did not commit legal error at Step V.

## IV. Conclusion

Accordingly, it is respectfully recommended that the Court affirm the decision of the Commissioner because the ALJ followed the regulations, articulated his findings, did not commit legal error, and set forth substantial evidence to support his decision.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: April 30, 2025                                    /s/ *Maarten Vermaat*
                                                         MAARTEN VERMAAT
                                                         U.S. MAGISTRATE JUDGE

15